And we'll be happy to hear from the appellant. Good morning. Good morning, may it please the court. My name is Dave Gettings, representing Waffle House, Incorporated and WH Capital, LLC. In failing to enforce Waffle House's arbitration agreement and compelling arbitration, the district court erred in three separate ways. First, regardless of what the district court felt about the fairness or unfairness of the arbitration agreement, it included a valid and binding delegation provision that was nearly identical to the delegation provision in the Supreme Court's Renner Center case that required decisions of gateway issues made by the arbitrator and not the court. Second, to the extent the district court did have authority to make gateway issues or gateway decisions, which it did not, it erred in implying that the arbitration agreement was procured by an impliedly improper ex parte communication. And third, once again, to the extent that the district court had the authority, which it did not, to the extent it decided the issue pursuant to its powers under Rule 23D of the Federal Rules of Civil Procedure, that rule did not apply because this arbitration agreement was not a communication between Waffle House and absent class members. Your Honors, what we have here is Mr. Two months after filing the lawsuit, he applied for a job at Waffle House and did not get that job. Undeterred, a week later, he applied again to Waffle House, and he was hired. And it's undisputed that he did not tell anyone that he was suing Waffle House, and nobody in the restaurant management knew he was suing Waffle House. And when he was hired, he signed Waffle House's standard arbitration agreement. The district court erred when it declined to enforce it. With respect to the first issue, the arbitration agreement includes a delegation provision that says any issues of enforceability, formation, interpretation, and applicability are to be decided by the arbitrator and not the court, including issues whether the agreement is void or voidable. Now this court has explicitly held when there is a clear and clear provision, threshold issues regarding enforceability or applicability of the agreement are to be decided by the arbitrator and not the court. And in fact, the delegation provision here was nearly identical, nearly identical to the delegation provision the Supreme Court examined and enforced in Rena Center, where it held that threshold issues, gateway issues, must be decided by the arbitrator and not the court. And it's clear, according to Rena Center and this court's Parnell case, that these threshold issues even apply to situations where the appellee may argue that the arbitration agreement is procedurally unconscionable. In fact, in Rena Center and in Parnell, both cases, the plaintiff, the appellee, argued that the agreement should not be enforced, because it was procedurally unconscionable. And in both cases, both Rena Center and Parnell, the court held that even issues of procedural unconscionability are barred by the delegation provision and must be decided by the arbitrator and not the court. So by failing to enforce the delegation provision here, the district court erred. Let me ask you a question. Should we recognize the holy groundless exception in this case, or should we bypass the question on the theory that we really don't have to answer it? Your Honor, I don't think the holy groundless exception is applicable or would apply here. Now first, the holy groundless exception would be contrary to 11th Circuit and Supreme Court precedent. Those courts specifically hold that in order to get past a valid delegation provision, you must specifically challenge the delegation provision itself. Now the holy groundless exception contemplates that a litigant can get past a valid delegation provision by effectively saying the dispute is so that would permit, contrary to this court's precedent and Supreme Court precedent, a litigant to get past a valid delegation provision with a collateral attack on the scope of the agreement, and effectively just bypass the delegation provision. And respectfully, Your Honor, that's contrary to both 11th Circuit and Supreme Court. So I take it your view is we ought to answer the question directly and holy groundless, as opposed to saying even if it applies, it wouldn't render a different result in the case. You'd have us go right to the merits of and reject that exception. Yes, Your Honor. I would reject the holy groundless exception. The second avenue by which the district court erred is assuming the district court had the right to assess enforceability, which it did not. It erred in finding, at least potentially implicitly, that this agreement was the product of an improper ex parte communication. Didn't the district court here treat the response by Jones, their opposition to your motion to compel, didn't the district court treat that as a specific challenge to the delegation clause? There was one specific challenge that Mr. Jones made to the delegation clause. That was not a challenge to the delegation clause itself being procedural and conscionable. The only challenge that- Why don't you walk me through it? I've got the Jones's opposition in front of me. Absolutely. The only challenge that Mr. Jones made, I believe it's around page 18 to 20 of the opposition, was a textual argument regarding the interpretation of the delegation provision. Now that argument that Mr. Jones made- That's essentially the holy groundless argument. Well, the holy groundless argument deals with the scope of the arbitration agreement. The textual argument was, when you look at the choice of law provision in the arbitration agreement with the delegation provision, aptly argued- Argued there was an ambiguity. Correct. And that, your honor, is fair for the district court to address because that's a direct challenge to the delegation provision. Now- The kind of challenges that the Supreme Court contemplates that need to be made in like with pristine pleading precision are challenges to oppose the delegation clause on grounds such as fraud, duress, or unconscionability. Isn't that correct? That is correct, your honor. And so, at least under Retta Center, in order to be able to get at the delegation clause, you have to make that type of a challenge. You have to make a challenge specifically to the delegation provision. And it's your view that Jones did not make that type of challenge. Isn't that correct? That's correct. The Supreme Court has held in Retta Center that a challenge to the agreement as a whole, which is what Mr. Jones did here, is not a challenge specifically to the delegation provision. And in that scenario- In his opposition, he contends at page three, for example, that the arbitration agreement as a whole is unconscionable. Correct. Now, that would not qualify as a correct pleading under Retta Center? That's correct, your honor. The court in Retta Center specifically held that you must target the challenge at the delegation provision. If you say that the agreement as a whole is unconscionable, that is not sufficient. Here, the district court set a hearing on purpose to consider the delegation, challenges to the delegation clause. So, I was viewing what happened here as the district court judge sort of edited the opposition to treat the opposition as though it were a pristine, specific challenge to the enforceability of the clause. Can a judge do that? The judge can certainly view whatever argument in a matter he sees fit. In the district court's order, where it set the bounds for the argument on the motion to compel, I believe it specifically said it wanted Mr. Jones to address the arguments, I believe on page 18 to 20 of his brief. And those arguments were, like you said, your honor, the wholly groundless exception. And the argument regarding the potential ambiguity, which there is none, created by the choice of law provision. And so, I don't think there ever was a direct challenge to the- It seemed to me that under Parnell and under Renner Center, for us, we have to decide, was there this pristine pleading challenge to the validity of the delegation clause? If the answer's no, then under the law, the case is over and the case has to go to arbitration. If the answer's yes, then the district court can entertain the arguments. And this district court looked like, the district court was clearly conscious of the requirements of Parnell. The district court thought it had the authority to judge the unconscionability of the delegation clause. That's correct, your honor. The district court thought it did, but the district court really ignored the distinction in its decision between a challenge to the arbitration agreement as a whole and a challenge to the delegation provision specifically. And so, while the district court, in its order, setting the topics for argument, noted the delegation provision. The district court didn't address, in either order, the clear guidance from And in fact, in the district court's order denying Waffle House's motion to compel arbitration, it did not mention the delegation provision at all. It didn't even consider that issue. Help me understand this. If you challenge the arbitration agreement as a whole, as unconscionable, wouldn't a subset of that be looking at the delegation provision? I don't understand why a district court, if you've challenged it as a whole, as a subsidiary part of the challenge to a whole, the district court would have discretion to say, well, part of my problem on unconscionability or not is the delegation provision. So, I don't understand your argument why the district court couldn't do what it did. So, first of all, the Supreme Court in Renner Center has made clear that you must actually specifically target the delegation provision and arguments as to the arbitration agreement as a whole. But we're talking about the discretion the district court had here, to look at the whole case. Rather than saying, okay, I'm going to let you amend your response, now you need to make a more specific agreement. I mean, a more specific, pristine challenge. I'm talking about to manage the case law, why couldn't the district court do what it did? Correct, so first, the district court- Without going through this rigmarole of come in and make a more specific challenge. So, the district court never said in any of its orders at the hearing that the plaintiff was making a direct challenge to the delegation provision. It never happened. But second, even if the district court was going to construe it as a challenge to the, may I continue, Your Honor? You may, indeed. Even if the district court was going to view it as a challenge to the delegation provision specifically, even if it was going to look past the gateway question, there was no procedural unconscionability here. And so, respectively, the delegation provision, we believe, is step one. And we don't think the district court could get past that. But even if it could, we also don't think there was any procedural unconscionability in the execution of the arbitration agreement. Well, it wasn't just in connection with the execution of the arbitration agreement that the district court ruled. I think they were concerned about the impact on the Rule 23 and on the class action proceeding in the district court judge's court. Isn't that correct? That's correct. May I continue, Judge? You may. So, that implicates the question about Rule 23D. And Rule 23D is designed to protect absent class members. It's designed to protect absent class members who may be uninformed about the status of litigation and their potential rights. And that's clearly what happened in, for example, the Billingsley case or the Kleiner case that the district court cited. What Rule 23D is not designed to do is to protect named plaintiffs and named parties who are fully aware of the material issues in the case. And according to at least Rule 23, a plaintiff who's supposed to be driving the litigation. Now, issues such as the ethical rules certainly guide those behaviors. But the ethical rules were not violated in this case. And the district court specifically said it was not making any decision that ethical rules were violated. Thank you, Your Honor. Thank you. Good morning, Your Honor. May it please the court. Justin Cachedori appearing on behalf of William Jones. So, there was some discussion during opening argument about the delegation provision. And I just want to emphasize what's at issue on this appeal. This appeal raises the issue of whether the trial court abused its discretion when determining that under Rule 23, it could regulate and manage the conduct and communications during a class action lawsuit. Now, courts have overwhelmingly held that the district court has this power and that where a communication threatens to impede the rights of class members or the named plaintiff, it's fair game for the district court to regulate that conduct and issue orders with the intent of preserving the integrity of the class action lawsuit. So, if you look at the Billingsley case, as Mr. Gettings just referenced, that was a very recent decision. It was 11th Circuit decision from three years ago, 2014. And the facts are very similar to this case. In that case, the district court refused to enforce an arbitration agreement. And this court upheld that ruling. It upheld that ruling under Rule 23D of the Federal Rules of Civil Procedure because it found that that arbitration agreement had the effect of prejudicing the claims in the class action. The arbitration agreement there, just like the arbitration here, was interposed during the class action lawsuit. And the court in Billingsley was very careful to note that it was not deciding that case under principles of unconscionability. Instead, it was deciding that case under Rule 23 of the Federal Rules of Civil Procedure and Rule 83, which is a more general provision, which says that the district court can take actions and issue orders to make sure that the orderly course of justice is followed in its courtroom. The Billingsley case has been very influential. It's been quoted with approval by two cases in particular, Your Honors. One of them is Balassanian. It was a case from the Northern District of California that's very similar to this situation as well. Again, you had an arbitration agreement that was entered into by the named plaintiff, as well as others, after the initiation of litigation. The court in Balassanian specifically said it wasn't going to address the issue of unconscionability. It went through the analysis and said, let's not talk about this. Let's just talk about Rule 23D. And just as the court did in Billingsley, in the Balassanian case, the district court said, we can't enforce this agreement as against the plaintiff or the plaintiff class because it was an unauthorized ex parte communication that took place during the pendency of a class action. And that's the distinction, Your Honors, that we have to look at here. We're not saying that pre-dispute arbitration agreements aren't enforceable. What was the conduct here that impinged on the Rule 23 action? I mean, I'm aware from Kleiner and Billingsley what the conduct, what was actually happening. But other than the fact that enforcement of the arbitration agreement would nullify Mr. Jones's ability to bring the class action, what other implications are there for the class action? Your Honor, it's exactly as you specified. In other cases, you have communications that are going out to class members. In this case, defendant's communication was direct. If snuffing out a class action is enough to make an arbitration agreement unconscionable, then virtually every arbitration agreement I've ever seen would be unconscionable because they all do that. I understand the court's concern. And just to reiterate, again, we're not talking about . . . Billingsley, I thought there was just more going on in Billingsley that drove the court's reasoning in that case than the fact that there was for the particular plaintiff who was involved, that that own plaintiff was going to lose the class action because they signed an arbitration agreement. And Your Honor, again, just to emphasize that we're not talking about unconscionability here, but the court's managerial discretion under Rule 23D and the Supreme Court in Gulf Oil . . . It would mean the same thing. It would mean in every case in which there is . . . I mean, let's assume that the arbitration agreement was entered into in the most polite possible way and that everybody agreed it was just fine and dandy, and then the party who's bound to it wants to bring a class action. And are we going to write a presidential opinion that says whenever anybody who, no question of an absence of arm's length, just perfectly beautiful contract, decides they bring a class action but they've agreed not to do that, that the court will nullify all those contracts? And that's not the rule I'm advocating, Your Honors. What is it? The rule is simply . . . You haven't shown me any other fact in the setting of a class action other than the fact that your client's right to bring a class action was erased by the arbitration agreement. And, again, the distinction here is agreements entered into prior to the filing of a class action and those that are entered into after the filing of a class action. In this case, my client had already filed a class action. And just to give you a little bit of background . . . The facts here show that at the time the arbitration agreement was signed, the parties that were doing it were not aware of the fact that he had filed the lawsuit. No. That's not correct, Your Honor. In the local house, they knew back at home base, in the database, they knew the name of your client. But when the fellow pushes the piece of paper across the table and says, here's a pre-signed agreement, that person with that knowledge in that place in Kansas City, they were not aware of the fact that your client had a lawsuit pending. The difficulty . . . And I appreciate that, Your Honor. We'll discuss that later on. The difficulty . . . And one of the principal arguments that Plaintiff Apelli has advanced in this case is that the difficulty with the communication here, the ex parte communication, is that defendants sought to enforce it in the trial court. The district court at the hearing discussed this at length. Someone at general counsel made the decision, perhaps with outside counsel, that an agreement signed by the general counsel of the company, of Waffle House, Jonathan Waller. He's an attorney. And countersigned by an adverse litigant, without his attorney's knowledge or consent . . . Didn't the court say in this decision, as your adversary referenced, that it wasn't basing its decision, which is what bites here, it wasn't basing that on ethical considerations? I don't believe that that was the case, Your Honor. The principal discussion in the court's order was Florida Rule of Professional Responsibility 4-4.2, which is the same in almost every state, and also the ABA model rules. It says you can't have ex parte communications with the represented party without the attorney's consent. I had no idea that my client was entering into an arbitration agreement that defense counsel subsequently told me affected his claims in this action. If they had come to me and asked me, do you agree to arbitrate this case on an individual basis, it was a pending class action, I would have, of course, said no. The lawyer, of course, must have actual knowledge of the fact of representation under the rule, right? That's correct, Your Honor. Is there any indication the lawyer had actual knowledge of the fact of representation? Yes, Your Honor. There was a colloquy in the district court. Counsel for the defendant acknowledged that Jonathan Waller knew about this lawsuit, knew about Jones' class action lawsuit. He knew that Jones was an adverse litigant, and as Mr. Gettings acknowledged in the trial court, the arbitration agreement had the intent of vitiating the class claims. That alone triggers the district court's discretion because . . . this is defendant's admission in open court, that because the arbitration agreement was intended to vitiate the class claims, the district court had discretion under Rule 23 to exercise orders to limit the effect of that action. He obviously knew about the class action. The question, though, is did he know that this agreement was being presented? He didn't have any actual communication with the plaintiff, right? That's my understanding, Your Honor. Yes. The Missouri people gave the agreement, pre-signed by Mr. Waller, to the plaintiff, correct? That's correct, Your Honor. Okay. That's my understanding of that. He didn't know there was communication going on. That's the point. Obviously, he knew there was a lawsuit. He's at the home office. He knows about lawsuits, but he had no knowledge that somebody in Missouri was giving this agreement. Is that correct? That's my understanding, Your Honor. Okay. With Billingsley and Kleiner and all those cases, the defendant initiates the communication with the class members, a prospective class member. They seem different than this case where the plaintiff initiates the communication. Do you see my stumbling block there? I see your point, Your Honor. I would emphasize . . . Is that correct? I'm not saying Billingsley doesn't help inform, but there's a material distinction between this case and Billingsley. Is that correct? I do not think that there is a point of difference, Your Honor. I do not think it's material. Okay. I understand that position. My client didn't . . . That's fair, but the defendant in Billingsley, and I think Kleiner, too, initiated going out to the class members, doing all these things, but here, the plaintiff initiated the communication. Is that correct? Yes, but let's be clear, Your Honor. He didn't initiate any communication about arbitration. He didn't go up to the manager at the Ozark Waffles, which is a subsidiary of Waffle House in Kansas City and Missouri to say, hey, I want to sign an arbitration agreement, or let's talk about arbitration. Let's talk about my current case. He went there for a job, and the courts, including Billingsley, and I would urge the courts to look at the O'Connor case, O'Connor v. Uber, which was cited in our briefs. There was a substantial discussion in that case about communications made during an ongoing business relationship. In fact, this was a concern in Kleiner, as well. The Kleiner court recognized that, at times, parties have an ongoing business relationship, and conduct by one party, in this case, the defendant, shouldn't be used to prejudice a pending class action, not when it's already been filed and the plaintiff is represented by counsel. Okay. Can I ask you about Mr. Waller? He signed the arbitration agreement as vice president, right? He didn't sign it as general counsel. Is that correct? That's what it says on the arbitration agreement, Your Honor. In the class action lawsuit, is Mr. Waller on the pleadings in the class action? I know he's general counsel, and they appropriately admit it. Well, therefore, he had knowledge or constructive knowledge of it, because he's general counsel. He knew about the case. He was not on the pleadings. He's not on the pleadings in your class. I'm not saying this is outcome determinative. I'm just trying to understand the data points here for you. That's correct, Your Honor. He is not. It bears emphasis, though, that my understanding is that he has no duties for the company, other than legal duties. The fact of the matter is . . . Was he general counsel at this time of the signing of the arbitration agreement or vice president or both? My understanding is that he's both. I'm sure counsel for defending could provide a more complete answer, but . . . To the delegation principal, I take it you accept the proposition of law that, at least in this circuit, that we may not review the claim . . . that you've got to make the challenge specifically to the delegation provision. No question about it. No question about that. It's not enough to challenge the validity of the entire agreement. If you want to challenge the delegation, you've got to specifically say, I challenge the delegation. Otherwise, the federal courts, at least in this circuit, may not review the claim because it's been committed to the power of the arbitrator. That's Hornbook law in this circuit, right? Yes, it is, Your Honor. Okay. Where did you specifically and directly challenge the delegation provision? I have looked more than once at this question, and it seems to me the most I can find that you said were the following. You one, challenged the validity of the arbitration agreement as a whole, rather than looking at the delegation provision specifically. And then in response to Waffle House's motion to compel, you claim that the arbitration agreement does not even encompass his claims in the lawsuit. Then you go on to say, quote, the claims at issue in the lawsuit accrued, and he had already filed this action before he allegedly signed the profit arbitration agreement. Then you go on to say that the agreement is not, quote, is an unauthorized ex-party communication between counsel and a representative party. And then finally, you say the arbitration agreement is unconscionable. But and the only argument you specifically make regarding delegation seems to me went to the whether the district court should recognize, quote, the holy groundless exception and decide the gateway issue. But I don't see in any of this, and I may have missed it, that you challenge specifically the validity of the delegation provision itself, rather than focusing on the question of whether the district court should abide by it. I just don't see a specific challenge. Maybe I missed it, but it looks to me like this is the first time the argument has been made. And even now, it doesn't seem to me that you challenge the delegation clause specifically, as opposed to the allegedly ex-party nature of the agreement. What am I missing? Your Honor, there's one point I'd like to make, which is that on page 139 of the record, a plaintiff did specifically attack this aspect of the delegation provision itself. That section is headed, and I see that I'm out of time, but. Now you take your time and answer this for me. Under Roman numeral three, the court and not the arbitrator must decide issues raised in this brief. And on the following page, after I discuss the holy groundless issue, I say, moreover, notwithstanding the delegation provision, the court should not delegate questions implicating its managerial discretion regarding the conduct of class actions, particularly where they implicate the ethical transgressions of counsel. I cite and quote Billingsley at length, and then I conclude this section, delegating such questions to the arbitrator would serve to authorize such questionable conduct. This is a direct attack on the arbitration, excuse me, on the delegation provision. It's in a part of the brief that's voted. Is that such as the paragraph that starts, moreover, and ends questionable conduct? Yes. And I realize that this is a brief attack, but that's only because the entirety of the brief has addressed these arguments at greater length. But you're citing Billingsley, which you say wasn't an unconscionability case itself. That's correct. But your challenge, your direct challenge to the delegation clause has to be based on fraud, duress, or unconscionability. Your Honor. But you're citing a non-unconscionability case to support that provision. I'm confused. Well, what I'm trying to do, Your Honor, is, as important, Balassani and Billingsley, O'Connor, the in-rate currency conversion cases all recognize is that you have to consider Rule 23D independently and before you consider the delegation provision. That makes sense. If I'm not mistaken, Parnell was on the books when this was all going on, is that correct? It's my understanding, Your Honor. Parnell was governing law when this was going on, was it not? It's my understanding. It's controlling law. And Parnell, as I understood it, had, in essence, grounded the points that the presiding judge just made about this need for a specific challenge, not a general challenge, et cetera, et cetera. And the difficulty I'm having, Your Honor, is that if the court wants to address the issue of the enforceability of the delegation provision, the same arguments that apply to the contract in this case, which is that it runs afoul of, you know, Rule of Professional Conduct 4.2, violating, you know, ex-party communications. Right. But that's a somewhat different argument, dealing with that. But let me ask the question in a slightly different way. When I looked at the delegation provision itself, at least it looked to me that it clearly and unmistakably evinced the party's intent to arbitrate any and all gateway issues. Have I misread that? That's what it says, Your Honor. So there's no question that when you look at the provision, it indicates that the party's intent when they entered into this contract was for the arbitrator to decide all gateway issues. All issues, Your Honor, that the arbitrator has the power to decide. Well, to resolve any dispute relating, quote, to the interpretation, quote, the applicability, quote, the enforceability, quote, or the formation of this agreement, including but not limited to any claim that all or any part of the agreement is void or voidable. I don't know how they could have written this more broadly, more generally. I agree with that, Your Honor. I've just never seen a case where a court has compelled arbitration on a delegation clause of a Rule 23D challenge or a Rule 83D challenge or where the defendant's conduct implicates the rules of professional conduct. The district court has an obligation to make sure that the officers of the court are complying with ethical rules and that the rules of civil procedure are being followed. I don't even know if an arbitrator would have that authority. These are the federal rules of civil procedure. The district court has that responsibility before we even get to the issue of the arbitration agreement. Let me ask you a slightly different question. You can help me with this. Why should we recognize the holy groundless exception? I understand that some circuits have, but I don't see anywhere in any of the law that suggests that I can just write it in by judicial fiat. You're taking the position we should recognize the holy groundless exception, right? That's correct, Your Honor. Why should we do that? The Tenth Circuit says no. The Fifth has said yes. The Federal Circuit has said yes. But why are they right and the Tenth Circuit wrong is really what I'm asking. I think it comes down, Your Honor, to the issue of contract formation. It's a bedrock principle of arbitration law under the FAA that first you have to make sure there is an agreement, that an agreement exists between the parties and that it covers the claims at issue in the lawsuit. Before you can even compel a matter into arbitration, you've got to find that the parties agree to arbitrate something. Just because an arbitration agreement just happens to mention scope doesn't mean that you're going to send any dispute, no matter how tangential to the issue being discussed in the lawsuit, to arbitration just so the arbitrator can say, yeah, you're right. It's not within the scope. Let's send it back to the district court. That's exactly what happened in the cases before the Federal Circuits and the Fifth Circuit, where there was an arbitration agreement that didn't seem to encompass the claims that were at issue in the lawsuit. And so, therefore, the arbitration agreement and the delegation provision in the arbitration agreement was inapplicable and there was no reason for the court to compel just the issue of the scope to the arbitrator. Let me ask one final question from my perspective, and we've gone over the time, but it's an Were Waffle House's arguments that the agreement was enforceable wholly groundless? Even if I went to it, were their claims wholly groundless? And you know, we talked about this before the district court, Your Honor. I mean, attorneys can find arguments that Yeah, we can find anything, but is that a wholly groundless claim? Is it so utterly frivolous? Would it have been sanctionable? I have raised that kind of thing on the theory that it's utterly frivolous. I'm not sure that This was a palpable argument. Maybe it would win. Maybe it wouldn't. I'm not so sure it would win, but it just didn't strike me if I actually went to the essence of the argument that it was wholly groundless. What am I missing? Your Honor, I mean, the Waffle House has had arbitration agreements in effect for a number of years attached, you know, as one of the exhibits to an attorney declaration was a previous arbitration agreement where Waffle House was very specific and said any claims, whether or not they relate to the employment relationship. Case law is specific that if you want an arbitration agreement to apply to pre-employment disputes, you've got to specify that. Don't forget, this case arises out of a denial of employment. My question My question is a very simple one. Was their argument wholly groundless? Yes, it was. No, it wasn't. I feel in the context of this case, Your Honor, it was wholly groundless. Why? In one line, why was it a wholly groundless claim? This case does not relate to plaintiff's employment. It relates to his denial of employment, Your Honor. He was specifically rejected from employment when he applied in Ormond Beach, Florida. It's that denial that actually gives rise to this lawsuit, not his employment by Waffle House. The agreement says nothing about pre-employment disputes, which other cases have found is a significant language in these agreements. And specifically, it does not mention a currently pending lawsuit. My client had already filed his lawsuit. We had sent a letter, I had sent a letter to the defense counsel very soon after my client came to me. Let me ask you about the status of the lawsuit. So were there other named plaintiffs besides this plaintiff in the class action? This was the only named plaintiff in this action, Your Honor. Okay. What's the status of the other action? I mean, was the class . . . has it been certified? Did you substitute plaintiffs? Tell me what's going on in the other case. What happened? In this case, what happened is we filed a motion for certification. After we filed that motion, the court held a hearing on arbitration and denied that motion and then stayed the action pending this appeal. After that, I filed with ten or twenty different named plaintiffs. Okay. So the action's still sitting there with a motion to substitute named plaintiffs. We haven't filed that motion, Your Honor. I filed a separate action altogether with different named plaintiffs. I see. On the same cause of action. Same cause of action. So basically, this arbitration agreement in force really only affects this plaintiff? Because you filed another action about all this with the other plaintiffs. I filed a totally separate action, Your Honor, involving . . . And even Mr. Jones's action has stayed. You could try to substitute people. I cannot take any action in the district court. I would have been in motion to substitute, Your Honor, but . . . But it stayed? It has stayed, Your Honor. Okay. But save for these two, the arbitration agreement doesn't really interfere with the court's general and managerial authority over these class actions, does it? Over the subsequent class action? Yeah. I mean, that's an entirely different action, Your Honor. The answer would be no. Yeah, that's correct. It would not . . . Okay. I'm just asking a simple question. The answer would be no, would it not? Correct. Okay. Thanks very much. Thank you. Your Honors, the first point I want to touch on, which I think the court hit on the head, is that we think this issue is controlled by the binding delegation provision. And to Judge Hull's question earlier, the Supreme Court in Rennes Center has specifically held that a challenge to the arbitration agreement as a whole is not enough. It's not enough to get past a binding delegation provision. As Judge Marcus noted earlier, we believe that this here is the first challenge on procedural unconscionability, to the extent that's what this is, on the delegation provision itself. And as this court recognized in the given case . . . The initial challenge as a whole can be amended, like in Parnell, I think we sent that case back and allowed them to amend the pleadings. As this court recognized in the given case, the court cannot consider a challenge to the delegation provision that is raised for the first time on appeal. I understand. I'm just coming back just to touch once more on the point that seemed to me that the district court judge probably knew what the rules are. It'd be hard to miss the rules from both Parnell and Rennes Center, that this pristine, almost like common law pleading at the common law in England, is required in order to frame up this issue. And so, the judge looks at a pleading from Jones and says, this isn't very pristine, but I'm going to treat it as though it were. I'm going to treat it. I'm going to amend it myself and have a hearing based on what I think the amended opposition is. Can the judge do that? I think conceivably, the judge could assess counsel's argument and decide that that is a challenge to the delegation provision. Did the judge do that here? He did not, Your Honor. Nowhere... Can you read the totality of what the district court judge did? So... Did he basically take the challenge and transmute it into a specific challenge to delegation and then address and adjudicate that challenge? Your Honor, he didn't even go that far. The answer would be no. No, correct, Your Honor. What the district court did in its order was... If he wanted to do it, he probably could have, I take it. Is your answer to Judge Clevenger? I would agree, Your Honor. I don't think the district court would not have the authority at the district court level. All he would have to do is at the time of argument say, well, you've argued this, but if you want to argue that, you've got to make it much more specific. Are you arguing that? And they say, oh, yeah, we are, Judge. You're correct, Your Honor. He could have done that. We're going to amend our challenge to include X, Y, and Z, and let's have at it, in which case the judge could say, okay, I'll let you do it, brief it, and let the other side respond or I'll let you do it, argue it, and I'll let the other side respond. Or the judge will say, no, I'm not going to let you do it. That's correct. Did any of that happen here? None of that happened, Your Honor. What we have in the court's order is effectively the court saying that it believed the arbitration agreement as a whole was unfair, unfair to enforce against Mr. Jones. There was no specific finding or specific mention of the delegation provision being unfair specifically. As the Supreme Court has said, that is not enough. That is error to avoid a delegation provision by simply considering an argument. And what was the theory behind that? Why does the Supreme Court say that in Rent to Center? And why do we say it in Parnell? Because the delegation provision is an antecedent agreement. The Supreme Court has held it's effectively a separate agreement from the agreement to arbitrate. And the Supreme Court can enforce that agreement and look at that agreement separately. It does. And so the Supreme Court has said courts must look at that antecedent agreement first and see if there's a specific challenge to that antecedent agreement. And if there is none, it's for the arbitrator to decide, not the court. And that's not to say that the arbitrator here won't look at this issue. We think we're right, but won't look at this issue and say, oh, I think it's not within the scope or I think something else about the agreement doesn't apply. But the important issue here is that that's not the court's decision to make. Because of the binding delegation provision, that's for the arbitrator to make. And now, moving on briefly to the substantive issues of unconscionability, which I don't think we should get to here. But the court noted earlier, there was nothing, or at least recounted the facts, there was nothing unconscionable about these communications here. Mr. Jones is the only one that knew he was walking into a Waffle House and applying for a job, and the only one that at that time knew he was suing Waffle House. I'll ask you this. Let's assume, and this is just for sake of argument, this hypothetical, that we think the whole thing should go to the arbitrator, okay? And you're satisfied if you just say this whole matter goes to the arbitrator, right? You're satisfied? Correct, Your Honor. Okay. And my question then is, it seems to me an arbitrator could look at all of this and decide, I'm not going to enforce the arbitration agreement. As to the class action, I'll enforce it to everything else. Couldn't an arbitrator decide that based on conduct, whatever they do? I mean, they'd have the power to decide that because they've got the power to decide the scope. To decide that he's . . . I mean, you might appeal it ultimately in coming back to the district court to vacate the judgment or whatever, but if everything goes to arbitration, couldn't the arbitrator, say, you know, I don't like how this happened, and I'm not going to enforce, as to the scope, the past pre-existing lawsuit, I'll take everything but that. The arbitrator could do that, right? He has the power to do that. Okay. Or she. Okay. There's clear law in the Eleventh Circuit that arbitration agreements can apply retroactively, and this wouldn't . . . I know, but they've got to decide whether they're going to apply it here, and how are they going to read it, and whatever. That's correct. The arbitrator has that authority. He could do that and could say, look, this is the general counsel, I'm just not going to do that, even though he initiated the conduct, he could . . . or she could outline. That could happen here. That could happen, Your Honor. Of course, if it did happen, and if the arbitrator did do that, and an appeal was then taken back to the district court, I'm not sure the district court would have any power to review that, save for some kind of claim of corruption or fraud or something like that, right? You couldn't even . . . if that's what happened, would there be a remedy to go back to the district judge, or would you be stuck with what the arbitrator had said, given the limited basis that you have under the FAA to take an appeal from the arbitrator's determinations? I have not gone back and looked at that standard recently, Your Honor, but I would say that would be clear error of law, and potentially manifest injustice if that occurred. But respectfully, I can't speak competently right now as to all grounds to . . . Let me just suggest to you, it would not be an easy appeal to perfect back in the district court. Fair enough. I see my time has expired. Thank you. Is there anything further you wanted to say? We gave him . . . we went over five minutes with your colleague. I'm not urging you to. How about this? If there was no challenge to the delegation clause, specifically enough, so it's fine, what you're saying is we should send it all to the arbitrator? That's absolutely what I'm saying, Your Honor. Okay. So, I don't know whether you got a good appeal after that or not, but what you want us to do is reverse and send it all to the arbitrator. Correct. Your view is the parties bargained for that? Correct. They evinced that intent, and the court ought to enforce it. That's correct, Your Honor. Thank you. I just want to ask one question. Isn't there a theory here that the holy groundless thing is basically an interpretation of an otherwise perfectly valid delegation clause? You say, yes, I accept delegation, yes, I accept that gateway issues have to go, but there's one kind of gateway issue that I am able to entertain jurisdiction to hear that. That's the theory, but that would be inconsistent with both Supreme Court and 11th Circuit law, because it would effectively be an end run around a clear and unmistakable delegation provision, which both the Supreme Court and the 11th Circuit have held you cannot do, because you must specifically. All right, so your position is simply we can't take a sneak preview and take a little peek at it? That's correct, Your Honor, but even if there's a little peek. It goes to them. It goes to them. It goes to them. If we can do it, we have to do it right. Correct. But even if we did it, was the argument wholly groundless? It was not, Your Honor. Tell me why not. There's a number of reasons why. If you look at this arbitration agreement, it is exceedingly broad. It applies to, first, all claims and controversies, which this court has held is a broad, broad use of language. It applies to all claims past, present, and future, which is broad as to time. And it applies to claims arising out of or pertaining to my employment. And this court has, once again, held that while that may not be all-encompassing, language like arising out of is also extremely broad. Now, if you look at the term my employment, the complaint uses the phrase my employment or employer or employee roughly 75 times. And so given this broad language, we think it clearly is within the scope. And even if the court says, well, it's debatable, it's potentially ambiguous, given the strong federal presumption in favor of arbitration, ambiguity is decided in favor of arbitration. And I believe that's the Martinez case, Your Honors. So for those reasons, we think it's within the scope and certainly not wholly groundless. Thank you both for your efforts. We'll proceed to the last case this morning.